IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PRIME ENERGY AND CHEMICAL, LLC,      )
                                     )
            Plaintiff,               )          Civil Action No. 18-345
                                     )          Chief Magistrate Judge Maureen P. Kelly
            v.                       )
                                     )          Re: ECF No. 15
TUCKER ARENSBERG, P.C., MICHAEL A.   )
SHINER, and KENNETH L. CARROLL, III, )
                                     )
            Defendants.              )

## **OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss Complaint, ECF No. 15, filed on behalf

of Tucker Arensberg, P.C. ("Tucker"), Michael A. Shiner ("Shiner"), and Kenneth L. Carroll, III

("Carroll") (collectively, "Defendants"). For the following reasons, the Motion to Dismiss is

denied.

## I.     **FACTUAL AND PROCEDURAL BACKGROUND**

In September 2015, Plaintiff Prime Energy and Chemical, LLC ("Prime Energy") entered

into a Letter of Intent and, in November 2015, a Purchase and Sale Agreement ("PSA"), with

Mark A. Thompson and Mid-East Oil Company. The agreements related to oil, gas, and shallow

mineral rights at the "Swamp Angel" property, located in McKean County, Pennsylvania. At all

times related to the transactions at issue, Thompson and Mid-East Oil were represented by

Shiner and Carroll, attorneys with Tucker. Prime Energy alleges that Shiner and Carroll

engaged in three separate instances of fraudulent misrepresentation and concealment related to

the underlying transactions, followed by an attempt to cover up the fraud, as follows:

(1) Defendants represented that Thompson owned the Property through MarcellX and Mid-East Oil, providing Thompson the unfettered right to engage in the subject transactions; when in fact Thompson owned an equal but not controlling share of the property's titled owner, MarcellX, and the remainder of MarcellX was owned by parties who had not consented to or participated in the Prime Energy transaction;

(2) Defendants represented that a deposit by Prime Energy of $600,000, equal to 20% of the purchase price, and an additional $78,800 payment, were required to ensure fulfillment of the purchase and to bring current an outstanding mortgage on the land. Defendants represented that such funds were to be wired to Shiner for placement in a designated attorney/Tucker escrow account; when in fact, upon receipt, the money was transferred directly to Thompson, or to Shiner for his personal use;[1]

(3) Defendants represented that the property was not subject to pending litigation, when at the time of the transactions at issue, at least one other multi-party fraud action was pending in this Court related to the sale of oil and gas rights, and that litigation resulted in the entry of judgment against Thompson in the sum of $2,000,000;

(4) Upon Plaintiff's discovery of the true ownership of the property, and the fact that the deposit money was never received by those who owned MarcellX and the property, Defendants covered up the misappropriation of the Prime Energy's funds by: (1) presenting a post-dated "consent" by MarcellX to Thompson's attempted sale of the property; (2) falsely stating that the funds were used to fulfill the PSA for MarcellX; (3) continuing to misrepresent Thompson's status as principal owner of the

---

[1] Prime Energy alleges that, "[o]n June 10, 2016, Shiner admitted in writing that no funds were, or ever had been, in a Tucker Arensberg/Shiner attorney escrow account. And in October 2016 Prime Energy learned for the first time that Shiner had caused the transfer of $50,000 of Prime Energy's money to himself." ECF No. 1 ¶ 24.

property through MarcellX and Mid-East Oil; (4) hiding the fact that the funds had not been deposited into Tucker's attorney escrow account; (5) failing to disclose that the funds were transferred directly to Thompson; (6) deceptively accounting for the use of the funds; (7) never disclosing pending litigation regarding the subject premises, oil and gas rights; (8) falsely asserting that Defendants and Thompson acted in compliance with the PSA in disregard of their diversion of funds and concealment of MarcellX's true owners.

ECF No. 1 at 6 -15. Prime Energy alleges that the factual representations made by Shiner and Carroll were material to the underlying transactions, and resulted in the loss of the escrow and mortgage payment funds wired to Shiner. Had the relevant facts been presented to Prime Energy, the funds would not have been remitted, and Prime Energy would not have lost the expected benefits of the underlying transaction, represented by the anticipated proceeds generated by the operation of existing oil and gas wells, and the drilling of additional wells.

Prime Energy alleges that Shiner and Carroll's conduct was intentional, fraudulent, reckless, and occurred as the result of Tucker's failure to supervise each of its attorneys to ensure that accurate and required truthful disclosures were made to all parties involved in commercial transactions in which the firm is engaged. Id. at 16. Accordingly, Prime Energy brings common law claims for fraud (Count I), reckless misrepresentation (Count II), negligent supervision (Count III), and respondeat superior (Count IV). Defendants move to dismiss Plaintiff's Complaint pursuant to Rules 9 and 12(b)(6) of the Federal Rules of Civil Procedure. The parties have filed briefs and extensive exhibits documenting the underlying transactions in support and in opposition to the Motion to Dismiss, and it is now ripe for disposition. ECF Nos. 16, 18 and 24.

## II.    STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in

the complaint and all reasonable factual inferences must be viewed in the light most favorable to

the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not

accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set

forth in the complaint. See California Public Employee Retirement System v. The Chubb Corp.,

394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion School Dist., 132 F.3d 902, 906

(3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be

enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478

U.S. 265, 286 (1986).

The United States Supreme Court has held that a complaint is properly dismissed under

Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is

plausible on its face," id. at 570, or where the factual content does not allow the court "to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. County of Allegheny, 515 F.3d 224, 231, 234

(3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation

of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts

suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation

that discovery will reveal evidence of the necessary element[s]" of his claim).

In deciding a motion to dismiss, we may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Pension Benefits Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Where appropriate, the Court shall consider certain of the exhibits filed by the parties, including the underlying PSA, and the docket relative to litigation affecting interests in the subject property.

## III. DISCUSSION

### A. Sufficiency of Allegations of Fraud

To state a claim for fraud under Pennsylvania law, Prime Energy must allege facts establishing "(1) 'a representation' which is (2) 'material to the transaction at hand,' (3) 'made falsely, with knowledge of its falsity or recklessness as to whether it is true or false,' and (4) made 'with the intent of misleading another into relying on it'; (5) 'justifiable reliance on the misrepresentation,' and (6) that 'the resulting injury was proximately caused by the reliance.'" Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 778 (3d Cir. 2018), quoting Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994). "A fraud occurs when one is induced to assent when he would not otherwise have done so. Fraudulent misrepresentation may be accomplished by concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon his detriment." Norfolk Southern Railway Company v. Pittsburgh & West Virginia Railroad, 870 F.3d 244, 255-56 (3d Cir. 2017) (internal quotation marks and citations omitted).

A plaintiff in federal court must also comply with Rule 9(b) of the Federal Rules of Civil Procedure and therefore must allege "'the date, time and place of the alleged fraud *or otherwise inject precision or some measure of substantiation into a fraud allegation' and must state 'the*

*circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged.*" Id. quoting Federico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (emphasis added).

In the instant case, Defendants assert that Prime Energy's claims should be dismissed because the Complaint fails to allege facts sufficient to meet these heightened pleading requirements. ECF No. 16 at 10-13. In particular, Defendants point to the absence of any allegations establishing Carroll's involvement in a specific fraudulent or reckless representation, arguing that the Complaint "fails to set forth the 'who, what, when, where, and how' sufficient to state a claim against him. As to Shiner, Defendants complain that the Complaint is similarly deficient, and point to the following allegation in support of their contention that the Complaint does not meet the pleading requirements for fraud, as it fails to allege the date and method the allegedly fraudulent representation was made:

> In the six weeks preceding the November 25, 2015 execution of the PSA, Shiner, purporting to act on behalf of MarcellX, Mid-East, Tucker Arensberg and himself, represented to and assured John Acunto and Prime Energy that the use of the attorney's escrow account would act as a "check" to ensure the Prime Energy deposit money was held and used in conformity with the PSA and promptly reported to Prime Energy.

ECF 16 at 11, quoting ECF No. 1 ¶ 19.

While it is true that the Complaint does not specify which of the two individual Defendants made certain representations, the Complaint indicates that both were involved in each pivotal portion of the transactions at issue. For example, the Complaint alleges, "Shiner and Carroll worked arm-and-arm in all phases of the transactions and the fraudulent activities alleged herein," and participated together in each of the frauds alleged in the Complaint. ECF No. 1 ¶ 9. In addition, Prime Energy states, "Defendants, through Shiner and Carroll, then gave Prime Energy wiring instructions, verbal and in writing, for the $600,000 deposit money to go to

6

an account which they represented to be a Tucker Arensberg attorney escrow account in the name of Shiner." Id. ¶ 20. With regard to ownership of the subject property, the Complaint alleges:

> Defendants caused the PSA to be executed exclusively by Thompson, having represented to Prime Energy in October 2015 and thereafter that the sole principal for the seller-parties to the PSA – MarcellX and Mid East Oil – was Thompson. At that time, Defendants asserted falsely that they represented both Mid-East Oil and MarcellX, in order to further Thompson and Defendants' scheme to have Thompson effectuate the transaction by and for himself (and for Defendants), without the participation of the true owners of MarcellX, and to take Prime Energy's money.

Id. ¶ 30.

Finally, with regard to the existence of pending litigation, the Complaint alleges, "Defendants represented in the PSA that "the Lease and the Wells [the Swamp Angel Property]: (a) are not subject to any outstanding injunction, judgment, order, decree, ruling, or charge; and (b) are not the subject of any pending or threatened claim, demand, filing, cause of action, administrative proceeding, governmental action or other litigation." Id. ¶ 37. Given Shiner and Tucker's representation of Thompson in the then pending litigation concerning the subject property, Prime Energy alleges that this was a false misrepresentation, known by Defendants to be false, and stated with the intent to conceal vital information from Prime Energy, and to profit thereby. Id. ¶¶ 38 – 39.

These allegations, at this stage of the litigation and in the context of the detailed description of the transactions set forth in the Complaint, on balance, are sufficient to place Defendants "on notice of the precise misconduct" with which Defendants are charged. Specifically, and apart from the alleged misrepresentations contained in the PSA, Carroll and Shiner are alleged to have provided instructions to wire money to an account falsely represented by them to be an attorney escrow account, and Shiner is alleged to have falsely represented the

7

purpose of the transferred funds, and thereafter personally benefitted from the transaction. The Motion to Dismiss on the basis of the alleged insufficiency of the allegations of fraud and reckless misrepresentation is denied.

### B. Settlement of Indiana County Action

Defendants next raise Prime Energy's settlement of cross-claims asserted against Thompson in an action filed in the Court of Common Pleas of Indiana County, Pennsylvania. Defendants contend that under Pennsylvania agency law, a release of claims against Thompson, as principal, precludes maintenance of an action against each of them, as his agent. ECF No. 16 at 13.

In support of the Motion, Defendants cite Pallante v. Harcourt Brace Javonich, Inc., 629 A.2d 146 (Pa. Super. 1993), where the Pennsylvania Superior Court held that where a claim against a principal is based on a single tort, and the principal is alleged to be only vicariously liable for the actions of its agent, settlement of the claim against the principal releases the agent. Id. at 149. Citing Mamalis v. Atlas Van Lines, Inc., 560 A.2d 1380 (Pa. 1989), the Superior Court held that a release between an injured party and an agent precluded an action against the agent's principal where the principal was only vicariously liable, and there is a single tort for which compensation is sought.

The Court notes that Pallante was specifically limited by the Pennsylvania Supreme Court in Maloney v. Valley Medical Facilities, Inc., 984 A.2d 478 (Pa. 2009). There, the Supreme Court distinguished between vicarious liability and joint and several liability in instances when a release agreement expressly preserved claims independent claims against an agent. The Pennsylvania Supreme Court held that the release of one physician and two medical practices did not release a second physician employed at one of those practices. "In the scenario

8

entailing a plaintiff's surrender of vicarious liability claims only and express preservation of claims against an agent, we hold that the parties to a settlement should be afforded latitude to effectuate their express intentions." Id. at 485. However, "the release of an agent operates to release the principal from vicarious liability claims, regardless of any attempted reservation of rights." Id., at 481 (emphasis added) (citing Mamalis). "'Certainly, as a matter of logic, it is hard to see how a principal could still be held vicariously liable after the release of its agent, the only real wrongdoer.'" Id. at 486 (quoting Hill v. McDonald, 442 A.2d 133, 138 n.5 (D.C. 1982)).

The case at bar, as argued by Prime Energy, does not present an instance of vicarious liability asserted against an agent, but rather claims of joint and several liability for each agent's independent actions. ECF No. 18 at 14. At this stage of the litigation, it is not yet determined whether the evidence will support independent or joint and several liability but based upon the allegations of the Complaint, read in a light most favorable to Prime Energy, the Court is constrained to agree that dismissal on this basis should be denied.

## C. Allegations of Fraud Arise from PSA

In what is essentially a rehashing of Defendants' argument that the Indiana County Action precludes litigation of claims against each of them, Defendants next contend that Prime Energy has not alleged that either Shiner or Carroll made fraudulent representations separate and apart from the PSA or that were not resolved in the Indiana County settlement agreement. However, as indicated *supra*, the Court has identified at least two alleged instances of conduct independent of Mark Thompson and Horizontal with regard to the depositing of funds into what was communicated to be a Tucker escrow account, where such funds were represented to be held as a deposit on the ultimate purchase of the property, or applied to an outstanding mortgage. Further development of a factual record may support additional representations made by Shiner

9

or Carroll upon which joint and several liability may be predicated but at this initial stage, the Court finds the allegations sufficient to deny the Motion to Dismiss on this basis.

### D. Gist of the Action

Defendants assert that the "gist of the action" doctrine bars this action because, according to Defendants, the Complaint recasts a breach of contract action as a fraud or tort claim. ECF No. 16 at 16-7.

As explained by the Pennsylvania Supreme Court,

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – *i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of trots and, hence, exists regardless of the contract, then it must be regarded as a tort.

Bruno v. Erie Ins. Co., 106 A.3d 48, 60 (2016). The United States Court of Appeals for the Third Circuit has explained that where asserted, "Courts must [] determine 'whether the nature of the duty upon which the breach of contract rests is the same as that which forms the basis of the tort claim [].'" Norfolk Southern, 870 F.3d at 256, quoting Bruno at 69 n.17. In Norfolk Southern, the Court of Appeals affirmed the District Court's rejection of the doctrine where it found the claim did "not arise from the contractual relationship between the parties, but rather from a trustee's fraudulent misrepresentations and omissions in seeking Norfolk Southern's consent [to a restructuring of a corporation holding certain leases of land]." In such an action, "the claim involves a 'broader social duty owed to all individuals" to refrain from fraud, and so was not barred by the "gist of the action" doctrine. Id.

Similarly, here, Prime Energy's claims raise the social duty owed by Defendants to all individuals to refrain from fraudulently misrepresenting essential facts to induce a party to act to

its detriment, *e.g.,* to wire funds as a "deposit" to an account that is not the safe harbor it was represented to be. Under these circumstances, the "gist of the action" doctrine does not bar Prime Energy's claims and the Motion to Dismiss on this basis is denied.

### E. Duty Owed by Attorney to an Opposing Party

Defendants next base their Motion to Dismiss on the traditional rule that in the absence of privity, an attorney does not owe a duty to act in the interests of an opposing party. ECF No. 16 at 17, citing Smith v. Griffiths, 476 A.2d 22 (Pa. Super. 1984). However, as recognized by Defendants, this rule does not apply where harm is suffered as a result of an attorney's commission of an intentional tort. Defendants therefore contend that the Complaint does not sufficiently allege an intentional tort so as to give rise to an obligation to act in furtherance of Prime Energy's interests. Id.

As an initial matter, a traditional attorney-client relationship is not required where it is alleged that an attorney deceived a party to business transaction in which he had a pecuniary interest. See, e.g., Eisenberg v. Gagnon, 766 F.2d 770, 779 (3d Cir. 1985). In Eisenberg, the United States Court of Appeals for the Third Circuit reversed the District Court's entry of judgment notwithstanding the verdict and reinstated a jury verdict against an attorney who participated in a scheme to sell securities in worthless coal rights as a tax shelter, and then concealed that he would share in the proceeds. Plaintiffs' theory, presented in their amended complaint and in opening and closing statements, was that attorney deceived them in a business transaction in which he had a pecuniary interest. In particular, the attorney drafted a tax opinion, issued under the name of his law firm, that misrepresented the deductibility of certain royalty payments. It was further alleged that the attorney concealed his own financial interest in the transaction. Based upon the evidence presented, the Court concluded that the resulting jury

verdict does not "hinge on the breach of duty an attorney owes clients or others in privity, but rests upon the more general principles applicable to a seller or other interested party who misrepresents the nature and value of goods, the tort known generally as negligent misrepresentation." Id.

Here, similarly, dismissal based on the absence of privity found in a traditional attorney client-relationship is not required because the Complaint sufficiently alleges that Shiner and Carroll made fraudulent misrepresentations of fact, opinion, or intention for the purpose of inducing Prime Energy to act to its detriment. It is alleged further that Shiner directly received a pecuniary benefit from the transaction. At this stage of the litigation, these facts are sufficient to nudge Prime Energy's claim across the plausibility threshold to survive a Motion to Dismiss.[2]

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed on behalf of Tucker Arensberg, P.C., Michael A. Shiner and Kenneth L. Carroll, III, ECF No. 15, is DENIED. An appropriate Order follows:

**ORDER**

AND NOW, this 23rd day of July, 2018, upon consideration of the Motion to Dismiss filed on behalf of Tucker Arensberg, P.C., Michael A. Shiner and Kenneth L. Carroll, III, ECF

---

[2] Because the Complaint states a claim against Shiner and Carroll sufficient to survive the Motion to Dismiss, the Court declines Defendants' invitation to dismiss claims against Tucker for failure to state a claim for negligent supervision and/or respondeat superior. ECF No. 16 at 18. Kilbride Investments Limited v. Cushman & Wakefield of Pennsylvania, Inc., 294 F. Supp.3d 369, 378 (E.D. Pa. 2018) (law firm could be held liable for fraud committed in the scope of employment). In addition, to the extent the parties have stipulated that references to specific dollar amounts of unliquidated damages will be removed from the Complaint, Defendants' Motion to Strike is denied as moot. ECF No. 16 at 18.

No. 15, and the briefs and exhibits filed in support and in opposition thereto, and for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that the Motion to Dismiss is DENIED.

BY THE COURT:

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE