IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRIME ENERGY AND CHEMICAL, LLC, | : | |
| Plaintiff | : | No. 2:18-cv-00345 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| TUCKER ARENSBERG, P.C., et al., | : | |
| Defendants | : | |

## MEMORANDUM

Presently before the Court is Defendants Tucker Arensberg, P.C., Michael A. Shiner, and Kenneth L. Carroll, III's motion to dismiss (Doc. No. 51) Plaintiff Prime Energy and Chemical, LLC ("Plaintiff")'s second amended complaint (Doc. No. 50) in part.[1] For the reasons explained below, the Court will deny the motion.

## I. BACKGROUND

### A. Factual Background[2]

Plaintiff is a Florida-based oil and gas company that previously entered into a contractual agreement with certain clients of Defendants "for the $3 million purchase of assets at the oil and gas property known as the 'Swamp Angel' property in McKean County, Pennsylvania" and, in connection with this agreement, underwent a series of transactions in 2015 and 2016 that have given rise to the instant case. (Id. ¶ 1.)[3] Defendants include Tucker Arensberg, P.C. ("Defendant Tucker Arensberg"), a Pittsburgh-based law firm, and two attorneys: Michael A. Shiner ("Defendant Shiner"), a shareholder with Defendant Tucker Arensberg, and Kenneth L. Carroll,

---

[1] When referring to the defendants named in this action collectively, the Court uses the term "Defendants" herein.
[2] Unless otherwise noted, the facts recited herein are derived from Plaintiff's second amended complaint. (Doc. No. 50.)
[3] The Court refers to this property as the "Swamp Angel Property" or the "Property" herein.

III ("Defendant Carroll"), an attorney formerly employed by Defendant Tucker Arensberg at all times relevant to the instant case. (Id.) MarcellX, LLC ("MarcellX") is a Pennsylvania LLC "that owned and controlled the oil and gas rights on a certain tract of land . . . in Lafayette, McKean County," pursuant to "an oil and gas lease dated May 25, 2011" (the "Swamp Angel Lease"), which "generally consists of acreage for development and 164 existing oil and gas wells." (Id. ¶ 13.) According to Plaintiff, Defendants, among other things, acting "independently and sometimes in association with their clients, Mark. A Thompson ('Thompson'), and his company, Mid-East Oil Company ('Mid-East Oil')[,] falsely and fraudulently misrepresented Thompson's alleged ownership of the Swamp Angel Property through MarcellX (a Pennsylvania company that was not owned by Thompson)" (id. ¶ 2), and also made fraudulent misrepresentations as to who would receive payments from Plaintiff as part of the overall transaction, as explained infra.

On October 9, 2015, Plaintiff signed a letter of intent to purchase the Swamp Angel Property, and on November 25, 2015, entered into a Purchase and Sale Agreement ("PSA") "to purchase the Swamp Angel Property, including (i) the Swamp Angel Lease, (ii) the existing wells on the Property, (iii) rights for the drilling of future wells on the Property, (iv) the shallow mineral rights . . . on the Property, and (v) drilling and other specified operating equipment on the Property." (Id. ¶ 14.) Under the PSA, Plaintiff was required to make a deposit of $600,000 toward the purchase price, and "Defendants furnished wire instructions for the deposit money to be paid to 'Recipient and Beneficiary – Mike Shiner Attorney for Mid-East Oil.'" (Id. ¶ 15.) In addition, "[t]he PSA similarly provided that the account was the 'Sellers [sic] attorney's [Tucker Arensberg] account.'" (Id.) (second and third alterations in original). On October 16, 2015, Parker Reed Corporation, acting on behalf of Plaintiff, "wired $50,000, per instructions from

Defendants and as per the Letter of Intent and PSA, to an account named 'Recipient/Beneficiary – Mike Shiner Attorney[,]' which Defendants represented was a Tucker Arensberg/Shiner escrow account." (Id. ¶ 16.) Parker Reed Corporation, also acting on Plaintiff's behalf, then wired an additional payment in the amount of $50,000 to this account on October 21, 2015. (Id.) Shortly thereafter, on October 23, 2015, a private investor wired $65,000 to this account on Plaintiff's behalf, and on December 31, 2015, a private investor also wired $435,000 to this account, which resulted in a total deposit payment of $600,000. (Id.)

Plaintiff avers that beginning in late 2015 and through late spring of 2016, "Defendants engaged in a course of fraudulent misrepresentation and concealment" as to: the ownership of the Property; "Defendants' commitment to ensure the fulfillment of [Plaintiff's] purchase of the property by its deposit of $600,000 . . . into a designated attorney escrow account[,]" which, ultimately, "was never in fact applied as a deposit on the purchase of the Property"; and "the purported absence of litigation to which the Property was subject." (Id. ¶ 18.) Plaintiff's second amended complaint sets forth factual assertions in support of the aforementioned allegations by characterizing them as follows: (1) the "Deposit Money Fraud"; (2) the "Fraudulent Misrepresentation of the Ownership of the Property"; (3) the "Fraudulent Concealment of Other Pending Litigation and Administrative Environmental Actions"; and (4) the "Fraudulent Cover-Up." (Id. at 7-16.)[4]

### 1. "The Deposit Money Fraud"

According to Plaintiff, while the PSA stated that the funds deposited by Plaintiff "were to be deposited into the 'Seller's attorney's account' . . . [Defendant] Shiner, purporting to act on

---

[4] The Court recites the pertinent allegations from the second amended complaint in this order, as well.

3

behalf of MarcellX, Mid-East [Oil], [Defendant] Tucker Arensberg[,] and himself, represented to and assured John Acunto[,]" ("Acunto"), a representative of Plaintiff, "that the use of the attorney's escrow account would act as a 'check' to ensure that [Plaintiff's] deposit money was held and used in conformity with the PSA and promptly reported to [Plaintiff]." (Id. ¶ 19.) Defendants subsequently provided Plaintiff with wiring instructions pertaining to the $600,000 deposit to be made to this account. (Id. ¶ 20.) Plaintiff avers that Defendants made these representations to induce Plaintiff into making this deposit payment and that such representations "were material and of vital importance to [Plaintiff's] decision to enter into the PSA and to pay $600,000 into the designated account." (Id. ¶ 21.)

In addition, Plaintiff alleges that Defendants fraudulently procured an additional payment of $78,800 from Plaintiff by "misrepresenting in mid-February 2016 that the additional money was in furtherance of the Property." (Id. ¶ 22.) Specifically, a private investor wired money in this amount on February 24, 2016, with Defendant Shiner "again as the recipient/beneficiary, to be used to bring current the monthly payment on a mortgage held by CNB Bank secured by the assets listed in the PSA[,]" and despite being aware of the mortgage, Defendants neither "disclosed the mortgage to Prime Energy[,]" nor disclosed, "as Plaintiff ultimately learned in mid-2016, that there were actually two loans against the Property." (Id.) According to Plaintiff, Defendants, rather, "prepared the PSA and other transaction documents with the misrepresentation that Thompson and 'his' companies, Mid-East Oil and MarcellX, owned the assets free and clear with no liens or encumbrances." (Id.) Plaintiff states that to further this fraudulent payment, Defendants Tucker Arensberg and Shiner surreptitiously communicated with Thompson on March 2, 2016 to advise him "how to evade full, truthful disclosure and accounting to [Plaintiff] for the $78,800 payment[,]" and, in the meantime, "Defendants knew,

but did not disclose to [Plaintiff], that a large part of the $78,000 had not in fact been expended as originally represented." (Id. ¶ 23.)

Following these transactions and other events, on June 10, 2016, Defendant Shiner "admitted in writing that no funds were, or ever had been, in a Tucker Arensberg/Shiner attorney escrow account" and in October of 2016, Plaintiff "learned for the first time that [Defendant] Shiner had caused the transfer of $50,000 of [Plaintiff's] money to himself." (Id. ¶ 24.) Acunto relied on Defendants' representations when he arranged the transfer "to what he misunderstood to be an attorney's escrow account," and Plaintiff would not have transferred the subject funds were it not for Defendants' purported fraudulent misrepresentations. (Id. ¶ 25.) Plaintiff further avers that in the course of these events, "Defendants had complete knowledge of their own and their clients' deception" in that "they were fully aware from the outset that they had created a fraudulent arrangement for [Plaintiff's] funds to be misdirected not to Defendants' escrow account but to an account controlled by Thompson." (Id. ¶ 26.)

### 2. The "Fraudulent Misrepresentation of the Ownership of the Property"

Plaintiff further maintains that "Defendants caused the PSA to be executed exclusively by Thompson, having represented to [Plaintiff] in October 2015 and thereafter that the sole principal for the seller-parties to the PSA – MarcellX and Mid-East Oil – was Thompson[,]" and that "Defendants asserted falsely that they represented both Mid-East Oil and MarcellX[] in order to further Thompson and Defendants' scheme to have Thompson effectuate the transaction by and for himself (and for Defendants), without the participation of the true owners of MarcellX, and to take [Plaintiff's] money." (Id. ¶ 30.) In March of 2016, Plaintiff became aware both "that Defendants' client Thompson did not own or legally control the Property" that Plaintiff entered into the PSA to purchase, and "that the true owners of MarcellX were David M. Prushnok, G.

5

Daniel Prushnok[,] and John P. Prushnok (the 'Prushnoks'), from Punxatawney, Pennsylvania." (Id. ¶ 33.) According to Plaintiff, Acunto "had never previously had contact with the Prushnoks, because Defendants concealed the truth – including the true ownership and owners of the Property – from [Plaintiff], and fraudulently pretended that their client Thompson was the sole owner of the Property." (Id.) Plaintiff states, though, that "[e]ven as of that time, as they were seeking to digest and deal with the solely emerging truth, [Plaintiff] did not fully understand that the concealment of the Prushnoks was simply a component of Defendants' swindle." (Id.) Plaintiff subsequently entered into a "revised and supplemental [PSA] with the Prushnoks" for $3,000,000, which closed in July of 2016. (Id. ¶ 34.) In connection with the revised PSA, the Prushnoks were represented not by Defendants Tucker Arensberg and Shiner, but, rather, other legal counsel. (Id.) Further, Plaintiff purportedly "had to pay MarcellX an additional $400,000 deposit and did not receive any credit toward the purchase with the $678,800 fraudulently misappropriated by Defendants and Thompson." (Id.) According to Plaintiff, on May 6, 2016, "having been caught in the misrepresentation of [Defendant] Tucker Arensberg's representation," Defendant Shiner "sent a letter to Plaintiff and its counsel acknowledging that Defendants did not represent MarcellX, but only Thompson and his company Mid-East Oil[,]" effectively acknowledging that Defendant Shiner "had known all along that Thompson and Mid-East Oil were not the owners of the Property and that the true owners had been excluded by Defendants from the transaction and had not received [Plaintiff's] deposit money." (Id. ¶ 35.)

### 3. The "Fraudulent Concealment of Other Pending Litigation and Administrative Environmental Actions"

Plaintiff further alleges that, through the PSA, Defendants represented that the Property was neither the subject of "any outstanding injunction, judgment, order, decree, ruling, or charge" nor "any pending or threatened claim, demand, filing, cause of action, administrative

6

proceeding, governmental action[,] or other litigation." (Id. ¶ 37.) Plaintiff describes this representation as a "false misrepresentation of fact[,]" on the basis that Defendants knew it was false and made the statement to conceal vital information regarding pending litigation from Plaintiff, specifically as to "major investment fraud litigation pending at the time in this Court against Thompson and his company[] involving the Swamp Angel Property" and "a second major investment fraud litigation pending at that time in the United States District Court for the District of Kansas against Thompson and his company" that also involved the Swamp Angel Property, as well as "a series of serious regulatory administrative proceedings before the Pennsylvania DEP regarding serious environmental violations, including a large oil spill." (Id. ¶ 38.) To that end, the second amended complaint refers to the action captioned as <u>Donald D. Sbarra Revocable Trust UAD 11/23/1998 v. Horizontal Exploration, LLC</u>, No. 2:14-cv-00866 (W.D. Pa. 2014), and assigned to the Honorable Maureen P. Kelly, and states that this case, where Judge Kelly issued an opinion "upholding the legal sufficiency of the fraud counts against Thompson and his company[,]" would have been "highly material to Plaintiff's entry into the PSA and its dealings with Thompson and Defendants" were it not for Defendants' purported concealment of this case. (Id. ¶¶ 39-41.) According to Plaintiff, the <u>Sbarra</u> case "was replete with information and allegations of . . . fraud committed by Thompson in connection with the Swamp Angel Property that, had it not been concealed by Defendants, would have been highly material to [Plaintiff's] entry into the PSA and its dealings with Thompson and Defendants." (Id. ¶ 41.)

In addition, Plaintiff points to a "major civil fraud suit [that] was pending in the United States District Court for the District of Kansas" at the time the PSA was executed and "directly affected the Property[,]" captioned <u>Frickey v. Thompson</u>, No. 14-cv-02189 (D. Kan. 2014),

7

wherein the district court "sustained the legal foundation of the fraud complaint – very similar and related to the fraud allegations in the Sbarra case – against Thompson and his company." (Id. ¶ 41(a).) Further, Plaintiff states that "[b]eginning in mid-2014 or earlier, the Property became the subject of a series of environmental violations charged by the Pennsylvania DEP against Thompson and his company, including a large oil spill which has not been remedied by Thompson to this day." (Id. ¶ 41(b).) In sum, Plaintiff states that it relied on the incomplete information provided by Defendants as to pending litigation or other actions involving the Property, and, were it informed of the existence of such actions, it "would not have paid $678,800 into what it understood to be a Tucker Arensberg/Shiner escrow account." (Id. ¶¶ 42-43.)

### 4. The "Fraudulent Cover-Up"

Plaintiff also avers that starting "in the third week of March 2016 and continuing through June 2016 and thereafter, as Plaintiff's principal became aware of irregularities in the handling of [Plaintiff's] money and of the fact that the deposit money was never received by the true owners of MarcellX as part of the purchase of the property from MarcellX, Defendants . . . embarked upon a cover-up of the fraudulent misappropriation of [Plaintiff's] money by" committing the following acts: (1) "presenting a post-dated 'consent' to Thompson's prior activities in connection with the PSA"; (2) "adopting and presenting the false assertion that Thompson's use of the $678,800 was in fulfillment of the PSA and for MarcellX"; (3) "continuing the deception that Thompson was the owner and principal of [the Property] through MarcellX and Mid-East Oil"; (4) "secreting the fact that Defendants had not received the $678,800 into their attorney escrow account"; (5) "secreting the fact that Defendants had knowingly and fraudulently caused [Plaintiff's] money to be transferred directly to Thompson"; "formulating and presenting to

8

[Plaintiff] a deceptive accounting of the deposit money, a full ten months after the initial request by [Plaintiff] for the accounting"; (6) "never disclosing the Sbarra case, the Frickey case[,] and the Pennsylvania DEP administrative actions"; and (7) "falsely asserting that Defendants and Thompson had acted in compliance with the PSA, even though Defendants knew that they and Thompson had in fact diverted the $678,800 from [Plaintiff], as well as from MarcellX and MarcellX's true owners." (Id. ¶ 45.) Plaintiff asserts in sum that these actions highlight Defendants' willful, malicious, and fraudulent intent "in implementing the fraudulent cover-up, which was a continuation and exacerbation of their entire fraudulent course of dealing[,]" as well as Plaintiff's reliance on these incomplete facts to its detriment, which caused Plaintiff to incur damages "as the direct consequence of the fraud." (Id. ¶¶ 47-48.)

### B. Procedural Background

Plaintiff commenced the instant case against Defendants by filing a complaint in this Court on March 15, 2018 that set forth the following four causes of action based on the events described above: fraud; reckless misrepresentation, negligent supervision, and liability under the theory of respondeat superior. (Doc. No. 1.) As it pertained to the fraud claim, Plaintiff's initial complaint included the factual allegations recited supra, except for certain facts pertaining to the alleged fraudulent concealment of litigation and environmental administrative actions regarding the Property. (Id. at 12.) On May 7, 2018, Defendant filed a motion to dismiss the complaint in its entirety for failure to state claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 15), which the Honorable Maureen P. Kelly denied on July 23, 2018 (Doc. No. 28). In her opinion and order disposing of the first motion to dismiss, Judge Kelly concluded, in pertinent part, that for purposes of Plaintiff's fraud claim, Plaintiff's allegations, "at this stage of the litigation and in the context of the detailed description of the

9

transactions set forth in the Complaint, on balance, are sufficient to place Defendants 'on notice of the precise misconduct' with which Defendants are charged." (Id. at 7.) Specifically, Judge Kelly noted that "apart from the alleged misrepresentations contained in the PSA, [Defendants] Carroll and Shiner are alleged to have provided instructions to wire money to an account falsely represented by them to be an attorney escrow account, and [Defendant] Shiner is alleged to have falsely represented the purpose of the transferred funds, and thereafter personally benefited from the transaction." (Id. at 7-8.) In addition, Judge Kelly found inapposite Defendants' argument as to the general rule "that in the absence of privity an attorney does not owe a duty to act in the interests of an opposing party[,]" reasoning that "this rule does not apply where harm is suffered as a result of an attorney's commission of an intentional tort" and, in the case at bar, "dismissal based on the absence of privity found in a traditional [attorney-client] relationship is not required because the [c]omplaint sufficiently alleges that [Defendants] Shiner and Carroll made fraudulent misrepresentations of fact, opinion, or intention for the purpose of inducing [Plaintiff] to act to its detriment." (Id. at 12.) Upon concluding that these allegations sufficed for purposes of the Court's Rule 12(b)(6) analysis, the Court denied Defendants' first motion to dismiss. (Id.)

Following the disposition of Defendants' motion, the parties filed a stipulation pursuant to Local Rule 8 amending certain references to specific dollar amounts in the complaint on July 26, 2018 (Doc. No. 31), and on the same date, Plaintiff filed an amended complaint against Defendants (Doc. No. 32), which Defendants answered on August 20, 2018 (Doc. No. 33). The case was then reassigned to the undersigned on October 23, 2018. (Doc. No. 48.) On October 28, 2018, Plaintiff filed the instant second amended complaint against Defendants (Doc. No. 50), which Defendants moved to dismiss in part pursuant to Federal Rule of Civil Procedure 12(b)(6)

on November 5, 2018 (Doc. No. 51). Having been fully briefed, Defendants' motion is ripe for disposition.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of a claim for failure to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. See id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3)

determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation marks omitted) (quoting Iqbal, 556 U.S. at 675, 679).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

### III. DISCUSSION

#### A. Applicable Legal Standard

##### 1. Plaintiff's Fraud Claim[5]

Federal Rule of Civil Procedure 9 imposes a heightened pleading standard with respect to a claim for fraud. Specifically, under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake[,]" while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." See Fed. R. Civ. P. 9(b). In addition, to state a claim for fraud or intentional misrepresentation under

---

[5] The Court analyzes the sufficiency of Plaintiff's claims in accordance with Pennsylvania law. See, e.g., Fry v. Phoenix Ins. Co., 54 F. Supp. 3d 354, 361 (E.D. Pa. 2014) ("When exercising diversity jurisdiction, a federal court sitting in Pennsylvania must predict how the Supreme Court of Pennsylvania would decide questions of state law.").

12

Pennsylvania law, a plaintiff must allege facts to satisfy the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation[;] and (6) the resulting injury was proximately caused by the reliance." See Lind v. Jones, Lang Lasalle Ams., Inc., 135 F. Supp. 2d 616, 620 (E.D. Pa. 2001) (citing Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994); Gruenwald v. Advanced Computer Applications, 730 A.2d 1004, 1014 (Pa. Super. Ct. 1999); Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999)). "[T]o be actionable, a false representation need not be in the form of a positive assertion but can be 'any artifice by which a person is deceived to his advantage [including] . . . concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment.'" Bucci v. Wachovia Bank, N.A., 591 F. Supp. 2d 773, 782 (E.D. Pa. 2008) (omission and second alteration in original) (quoting Wilson v. Donegal Mut. Ins. Co., 598 A.2d 1310, 1315-16 (Pa. Super. Ct. 1991)). As to the element of reliance, Section 544 of the Restatement (Second) of Torts defines reliance as follows: "The recipient of a fraudulent misrepresentation of intention is justified in relying upon it if the existence of the intention is material and the recipient has reason to believe that it will be carried out." See RESTATEMENT (SECOND) OF TORTS § 544 (Am. Law Inst. 1977); see also Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs., 951 F. 2d 1399, 1412 (3d Cir. 1991) (discussing the definition of reliance provided by the Restatement (Second) of Torts).

### 2. The Doctrine of the Law of the Case

The doctrine of the law of the case precludes review of legal issues previously decided. See In re City of Phila. Litig., 158 F.3d 711, 717-18 (3d Cir. 1998); see also Hamilton v. Leavy,

322 F. 3d 776, 786-87 (3d Cir. 2003) ("The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." (quoting In re Continental Airlines, 279 F. 3d 226, 232 (3d Cir. 2002))). "While the doctrine does not operate to preclude reconsideration of an interlocutory order, however, its underlying principles may provide grounds for declining to do so." In re Le-Nature's, Inc., No. 09-cv-162, MDL No. 2021, No. 08-cv-1518, 2012 WL 363981, at *2 (W.D. Pa. Feb. 2, 2012) (footnote omitted). "This Circuit has recognized several 'extraordinary circumstances' that warrant a court's reconsideration of an issue decided earlier in the course of litigation. They include situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F. 3d 111, 116-17 (3d Cir. 1997). The previous disposition of a motion to dismiss may constitute the law of the case. See, e.g., In re Florimonte, 599 B.R. 497, 504 (Bankr. M.D. Pa. 2019) (denying a motion to dismiss on the ground that the court's denial of a previous motion to dismiss constituted the law of the case); see also United States v. Bogart, 4:12-cv-347, 2014 WL 7507260, at *6 (M.D. Pa. Dec. 8, 2014) (recommending denial of a motion to dismiss where the motion failed to "recite any of the extraordinary or compelling circumstances" that "would justify setting aside the law of the case and re-litigating [the] previously discredited claims"), report and recommendation adopted, No. 4:12-cv-347, 2015 WL 136389 (M.D. Pa. Jan. 8, 2015). The doctrine of the law of the case, however, does not apply if a court did not previously address the subject issue. See, e.g., Waterfront Renaissance Assocs. v. City of Phila., 701. F. Supp. 2d 633, 639 (E.D. Pa. 2010) (concluding that "[t]he law of the case doctrine does not apply because the court did not decide

any issue of law raised in the [defendant's] motion to dismiss when it granted [the plaintiff's] motion for leave to amend").

B.   **Arguments of the Parties**

1.   **Defendants' Arguments in Favor of Dismissal**

Defendants move for dismissal of Section C of the second amended complaint – which sets forth factual assertions pertaining to the alleged "fraudulent concealment of other pending litigation and administrative environmental actions" pertaining to the Property (Doc. No. 50 at 12) – on the basis that "Plaintiff has not and cannot plead facts to establish" either "a representation on behalf of the Defendant [a]ttorneys in paragraph 6.a.viii. of the PSA" or "that Plaintiff relied upon the Seller's Representation in paragraph 6.a.viii. of the PSA when it remitted $678,800" (Doc. No. 52 at 12). As to representation, Defendants argue that "[p]ursuant to the language of the PSA, it is clear that the Seller (Mark. A Thompson and Mid-East)," rather than Defendants, "made the representation in paragraph 6.a.viii. of the PSA." (Id.) Defendants assert that they were acting as agents for a disclosed principal, and, as such, are "not personally liable on a contract between the principal and a third party" absent a specific agreement to assume liability, and they cannot be liable on this ground because "[a]ttorneys do not vouch for the probity of their clients when they draft documents reflecting their clients' promises, statements, or warranties." (Id.) (citing Schatz v. Rosenberg, 943 F. 2d 485, 495 (4th Cir. 1991); Revere Press, Inc. v. Blumberg, 246 A. 2d 407 (Pa. 1968)).

In regard to the element of reliance for purposes of Plaintiff's fraud claim, Defendants assert that Plaintiff has not alleged facts to satisfy this element of its fraud claim because "pursuant to the language of the PSA, the Seller's Representation in paragraph 6.a.viii. is effective upon the closing of the transaction (not on the execution of the PSA) and Plaintiff

15

remitted the $678,800 before the closing of the transaction (and $165,000 of that amount before the PSA was even executed)." (Id. at 13.) Defendants state that Plaintiff's allegations regarding the veracity of any representations as to pending litigation regarding the Property are implausible because this specific representation "was effective at the time of the closing . . . not upon the execution of the PSA" and "[n]owhere under the Seller's Representations section of the PSA in paragraph 6.a. does the PSA state that the Seller's Representations were effective as of the date of the agreement." (Id. at 14.) According to Defendants, Plaintiff's second amended complaint is insufficient because "Plaintiff does not even allege that Seller's Representation in paragraph 6.a.viii. of the PSA was breached"; the Swamp Angel transaction closed in July of 2016 after the parties entered into an extension agreement to the PSA that incorporated the terms of the PSA; and "Plaintiff does not allege . . . that it has a claim against Seller that its title is encumbered by litigation." (Id. at 15.)

In addition, Defendants state that the second amended complaint indicates that Plaintiff made the payments totaling $678,800 before the closing in July of 2016, as evidenced by the instances between October of 2015 and February of 2016 in which money was wired for this purpose. (Id.) (citing Doc. No. 50 ¶¶ 16, 22). Defendants argue, therefore, that "Plaintiff has not and cannot plead facts to establish its bald allegation that [it] relied upon the Seller's Representation in paragraph 6.a.viii. of the PSA – a representation that was effective at the closing of the transaction – when it remitted the $678,800 before the closing." (Id. at 15-16.) Defendants maintain that, in light of the above, this Court should dismiss Section C of Plaintiff's complaint with prejudice. (Id. at 16.)

### 2. Plaintiff's Arguments in Opposition to Dismissal

In opposition, Plaintiff asserts that Defendants' motion should be denied for two reasons: (1) the doctrine of the law of the case applies to Judge Kelly's denial of Defendants' first motion to dismiss; and (2) Defendants' arguments as to misrepresentation and reliance are "redundant of the prior motion to dismiss and are purely fact-based." (Doc. No. 54 at 8.) As to the former point, Plaintiff argues that "Judge Kelly specifically sustained the sufficiency of Plaintiff's claim . . . with respect to Defendants' concealment of the Sbarra litigation that was pending before this Court but not disclosed to Plaintiff in a schedule to the PSA[,]" and the second amended complaint differs from the prior amended complaint only in that it includes allegations as to "two additional proceedings that were concealed by Defendants." (Doc. No. 54 at 8-9) (discussing the inclusion of facts pertinent to the Frickey action and environmental proceedings before the Pennsylvania DEP). As to Defendants' latter argument regarding the misrepresentation and reliance prongs of Plaintiff's fraud claim, Plaintiff states that "Defendants[s'] 'no reliance' argument failed on the original motion to dismiss" and "[t]heir contorted interpretation of the PSA, which would purport to conflate the 'Seller's Representations' in [paragraph] 6.1.viii of the PSA with a separate 'closing documents' clause" is without merit because it is "based entirely on factual contentions and contorted contractual interpretations" that do not provide an adequate basis for dismissal at this stage. (Id. at 9-10.)

### C. Whether the Court Should Dismiss the Portion of Plaintiff's Second Amended Complaint Alleging Fraudulent Concealment of Other Pending Litigation and Administrative Environmental Actions

Upon review of the record, the parties' arguments, and the applicable law, the Court finds that Defendants' arguments in favor of dismissal of Section C of the amended complaint are without merit, and, accordingly, the Court will deny Defendants' motion to dismiss. First, the Court concludes that Judge Kelly's prior opinion and order as to Defendants' previous motion to

dismiss constitutes the law of the case, and Defendants have not persuaded the Court that any exceptions to the law of the case doctrine are present so as to warrant a departure from Judge Kelly's previous ruling. Indeed, Judge Kelly specifically found the following allegations sufficient to withstand scrutiny on a motion to dismiss: that "Defendants represented in the PSA that 'the Lease and the Wells [the Swamp Angel Property]: (a) are not subject to any outstanding injunction, judgment, order, decree, ruling, or charge; and (b) are not the subject of any pending or threatened claim, demand, filing, cause of action, administrative proceeding, governmental action[,] or other litigation.'" (Doc. No. 28 at 7) (first alteration in original). Accordingly, Plaintiff's assertion of facts in the second amended complaint pertaining to additional litigation and environmental enforcement proceedings comports with Judge Kelly's determination that Plaintiff has proffered sufficient factual allegations to support their claim that Defendants fraudulently concealed the existence of pending actions pertaining to the Property for purposes of a fraud claim. See Waterfront Renaissance Assocs., 701 F. Supp. 2d at 639 (stating that "[t]he law of the case doctrine applies 'to issues expressly decided by a court in prior rulings and to issues decided by necessary implication'" (quoting Bolden v. Se. Pa. Transp. Auth., 21 F. 3d 29, 31 (3d Cir. 1994))). Moreover, Defendants have not shown that any of the narrow exceptions to the doctrine of the law of the case – such as an intervening change in controlling law, the availability of new evidence, or the need to prevent clear error or a manifest injustice – exists in this case. See Schneyder v. Smith, 709 F. Supp. 2d 368, 383 (E.D. Pa. 2010) (citing In re Engel, 124 F. 3d 567, 584 (3d Cir. 1997)). Consequently, because Judge Kelly's prior opinion and order constitute the law of the case as they apply to Plaintiff's allegations set forth in Section C of the second amended complaint, Defendants' arguments in favor of dismissal on this ground are without merit.

Moreover, even if the disposition of Defendants' first motion to dismiss were not considered the law of the case, the allegations set forth in Section C of the second amended complaint are sufficient to support Plaintiff's fraud claim and withstand scrutiny for purposes of a Rule 12(b)(6) motion. As noted above, a claim for fraud or intentional misrepresentation under Pennsylvania law consists of the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation and (6) the resulting injury was proximately caused by the reliance." See Lind, 135 F. Supp. 2d at 620 (citing Gibbs, 647 A.2d at 889; Gruenwald, 730 A.2d at 1014; Bortz, 729 A.2d at 561). In the instant case, Plaintiff has averred that the alleged misrepresentation regarding other actions involving the Property was material to its entry into the PSA and monetary payments made in connection therewith, and had these actions been made known, Plaintiff would not have engaged in the transactions described in the second amended complaint. (Doc. No. 50 at 15) (stating, inter alia, that were it not for "Defendants' concealment of the litigation and regulatory information, [Plaintiff] would not have paid $600,000 as a deposit pursuant to the PSA and would not have paid the additional $78,800 demanded by Thompson"). Such factual assertions are plainly sufficient for purposes of the instant Rule 12(b)(6) analysis, and, accordingly, the Court will deny Defendants' motion to dismiss this portion of the second amended complaint.[6]

---

[6] In addition, to the extent Defendants argue that, in light of certain contractual language as well as the time at which certain money was wired on Plaintiff's behalf, it would not be possible for Plaintiff to satisfy the "misrepresentation" or "reliance" elements of a fraud claim, such an argument necessarily invokes contractual interpretation and is inapposite for purposes of a motion to dismiss, and, rather, more appropriate for potential resolution at the summary judgment stage. See Masciantonio v. SWEPI LP, No. 4:13-cv-0797, 2014 WL 4441214, at *6 n.5 (M.D. Pa. Sept. 9, 2014) ("If a writing is not ambiguous, it is appropriate for a district court

## IV. CONCLUSION

In consideration of the foregoing, the Court will deny Defendants' motion to dismiss. (Doc. No. 51.) An appropriate Order follows.

---

to resolve the issue of contract interpretation as matter of law, but typically on summary judgment rather than a motion to dismiss." (citing Butters Living Tr. v. SWEPI, LP, No. 4:12-cv-02010, 2013 WL 3679533, at *4 (July 12, 2013))); see also PR Gainesville, LLC v. UP Dev. – Gainesville 500 Acres, LLC, No. 18-957, 2018 WL 2021076, at *6 (E.D. Pa. May 1, 2018) (declining to dismiss a request for attorney's fees where the disposition of the request involved arguments "requir[ing] contract interpretation best left for summary judgment"); Brocious Trucking, Inc. v. BFL, Inc., No. 09-cv-741, 2010 WL 569559, at *4-5 (W.D. Pa. Feb. 11, 2010) (finding that a fraudulent transfer claim met the applicable pleading standard and denying a motion to dismiss without prejudice to the moving party's renewal of arguments in favor of dismissal at summary judgment).