# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRIME ENERGY AND CHEMICAL, LLC** | : | CIVIL NO. 2:18-CV-0345 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **TUCKER ARENSBERG, P.C., et al.,** | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM AND ORDER**

### I. **Factual Background**

This case has been referred to us for the purpose of resolving several discovery disputes, including a motion by the defendants to compel compliance with a third-party subpoena served upon First America Energy, Inc., a corporation which is distinct from, but shares close ownership ties with, the plaintiff Prime Energy and Chemical, LLC. (Doc. 86). The background of this dispute is thoroughly detailed by the district court in a series of opinions addressing dispositive motions. See Prime Energy & Chem., LLC v. Tucker Arensberg, P.C., No. CV 18-345, 2018 WL 3541862, at *1 (W.D. Pa. July 23, 2018), Prime Energy & Chem., LLC v. Tucker Arensberg, P.C., No. 2:18-CV-00345, 2019 WL 3778756, at *1 (W.D. Pa. Aug. 12, 2019). However, for purposes of our consideration of this discovery dispute, the pertinent facts can be simply stated:

1

The plaintiff, Prime Energy, is a Florida-based oil and gas company that previously entered into a contractual agreement with certain clients of the defendant law firm and attorneys for the $3 million purchase of assets at the oil and gas property known as the "Swamp Angel" property in McKean County, Pennsylvania and in 2015 and 2016, Prime Energy engaged in a series of transactions in connection with this agreement. These transactions and their aftermath gave rise to this lawsuit. In its complaint, Prime Energy alleges that, in connection with these transactions, the defendants engaged in a series of fraudulent activities relating to the ownership of the property, the disposition of deposit money, concealment of other litigation relating to the property, and other alleged cover-ups. Prime Energy also brings claims against the defendants grounded in recklessness, negligence, and *respondeat superior* liability. (Doc. 50). Prime Energy alleges that it suffered a series of significant direct and consequential damages as a result of this fraud. (Id.)

With Prime Energy's claims framed in this fashion, the parties have engaged in a course of discovery which has been at times acrimonious. As part of that discovery, the defendants learned in the summer of 2019 that Prime Energy had transferred ownership of its interests in the Swamp Angel property to a distinct but closely related corporation, First America Energy, Inc., in March of 2017. Reasoning that the details of this transfer—including the consideration paid for the transfer, any income that Prime Energy received from the transaction, and any efforts by First

2

America Energy to market the property—would all be matters relevant to the plaintiff's claims of millions of dollars in consequential damages flowing from this transaction, on June 24, 2019, the defendants subpoenaed First America Energy demanding the production of documents relating to this transaction. This June 24, 2019 subpoena was issued approximately 10 days after the defendants received confirmation of the Prime Energy-First America Energy transaction in the course of a deposition, and was issued one week prior to the expiration of the July 1, 2019 discovery deadline prescribed by the district court in this case.

First America Energy, acting through plaintiff's counsel, objected to the subpoena, arguing that it was both untimely and sought information that was irrelevant to the issues in this litigation. When First America Energy refused to comply with the subpoena, the defendants moved to compel compliance. (Doc. 86). First America Energy responded to this motion by once again insisting that the subpoena was untimely, and arguing that the information sought from First America Energy was irrelevant. (Docs. 93, 94). This motion is now fully briefed and ripe for resolution.

For the reasons set forth below, the motion to compel will be granted.

**II.   Discussion**

Several basic guiding principles inform our resolution of this discovery dispute. At the outset, "Rule 45 of the Federal Rules of Civil Procedure establishes

the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit. Fed. R. Civ. P. 45. A subpoena under Rule 45 'must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1).'" First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F.Supp.2d 362, 382 (E.D. Pa. 2013) (quoting OMS Invs., Inc. v. Lebanon Seaboard Corp., No. 08–2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)). Rule 45 also confers broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands. In this regard, it is well settled that decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. R.J. Reynolds Tobacco v. Philip Morris Inc, 29 F. App'x 880, 881 (3d Cir. 2002). This far-reaching discretion extends to decisions regarding how to enforce compliance with subpoenas, where "[i]t is well-established that the scope and conduct of discovery are within the sound discretion of the trial court." Coleman-Hill v. Governor Mifflin School Dist, 271 F.R.D. 549, 552 (E.D. Pa. 2010) (quoting Guinan v. A.I. duPont Hosp. for Children, No. 08–228, 2008 WL 938874, at *1 (E.D. Pa. Apr. 7, 2008); Marroquin–Manriquez v. INS, 699 F.2d 129, 134 (3d Cir. 1983)) (internal quotations omitted).

This broad discretion, however, is guided by certain general principles. At the outset, when considering a motion to quash or modify a subpoena, we are enjoined

4

to keep in mind that the reach of a subpoena is defined by the proper scope of discovery in civil litigation. As one court aptly observed:

> Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure authorizes a court to quash or modify a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv), 28 U.S.C. (1994); see Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enter., 160 F.R.D. 70, 72 (E.D. Pa. 1995) (Joyner, J.) (stating same). Accordingly, a court may quash or modify a subpoena if it finds that the movant has met the heavy burden of establishing that compliance with the subpoena would be "unreasonable and oppressive." Id. (citing Heat & Control, Inc. v. Hester Indus., 785 F.2d 1017, 1023 (Fed. Cir. 1986)). [However, when assessing a motion to quash we must also consider the fact that] Rule 26(b)(1) provides that discovery need not be confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Wright v. Montgomery County, No. 96-4597, 1998 WL 848107, *2 (E.D. Pa. Dec. 4, 1998). Thus, in ruling upon objections to a subpoena, "this court is required to apply the balancing standards-relevance, need, confidentiality and harm. And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002). Accordingly, in evaluating a motion to compel we are mindful that:

> Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

5

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Thus, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("Although the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.... Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Accordingly, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding

6

any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus, we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 94078, at *2 (M.D. Pa. Jan. 8, 2020).

Further, the court's evaluation of a motion to compel compliance with a Rule 45 subpoena is also governed by shifting burdens of proof and persuasion. Accordingly, "the subpoenaing party bears the initial burden to establish the relevance of the material sought, and then the burden shifts to the subpoenaed party to demonstrate that the subpoena seeks privileged or otherwise protected material under Rule 45." L.W. v. Lackawanna Cty., Pa., No. 3:14CV1610, 2015 WL 1499865, at *1 (M.D. Pa. Apr. 1, 2015) (citing In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234 (E.D. Pa. 2014)).

Judged against these legal guideposts, we conclude that the defendants have carried their initial burden of establishing the potential relevance of this subpoenaed information. The financial and economic details relating to the March 2017 transfer

7

of the Swamp Angel property from the plaintiff to a separate, but closely related, corporate entity, First America Energy, is in our view clearly relevant to the plaintiff's claims for consequential damages. While the plaintiff and First America Energy oppose this subpoena, arguing that it is duplicative of discovery already propounded upon the plaintiff, given the gravity of the allegations leveled by the plaintiff in this litigation, we believe that the defendants are entitled to secure complete discovery from both parties involved in the March 2017 transfer of the Swamp Angel property. Further, while we note that Russell Parker, a principal in both Prime Energy and First America Energy, has filed a declaration in opposition to this subpoena, (Doc. 93), we do not believe that this declaration defeats the defendant's showing of relevance. Fairly construed, Mr. Parker's declaration seems to suggest that compliance with this subpoena by First America Energy will disclose information that will not advance the defendants' case because it will support Prime Energy's claim for consequential damages. This may be so, but that fact does not make the evidence irrelevant. Instead, it would simply reveal that this evidence is relevant, but not helpful to the defense, and parties are entitled through discovery to learn both how good, and how potentially bad, their case might be.

Having found the information sought by the subpoena to be relevant, we further conclude that First America Energy has not shown that compliance with that subpoena would be oppressive or unreasonable. On this score, First America simply

8

argues that the subpoena, which was issued on June 24, 2019, some 7 days before the July 1, 2019 discovery deadline expired, was untimely. This argument, however, fails to take into account the fact that the defendants were only fully informed of the potential relevance of this transaction in mid-June 2019. Thus, the subpoena issued by the defendants was served prior to the expiration of the discovery deadline, and was propounded by the defendants within days of learning of the potential relevance of this information. Given these facts, we join those courts which have rejected similar timeliness challenges to subpoenas issued prior to a discovery deadline and shortly after the party issuing the subpoena learned of the existence of potentially relevant evidence. See Leach v. Quality Health Servs., Inc., 162 F.R.D. 40, 42 (E.D. Pa. 1995).

Finally, we note that First America Energy and Prime Energy are hard-pressed to advance these timeliness arguments since Prime Energy has itself filed a series of discovery motions after the discovery deadline in this case passed. (Docs. 85, 97). Thus, Prime Energy concedes that, from its perspective, discovery is not fully closed. Given this concession, Prime Energy, and its related corporate entity First America Energy, cannot be heard to complaint that the defendants also seeks some further measure of discovery from them.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRIME ENERGY AND CHEMICAL, LLC** | : | CIVIL NO. 2:18-CV-0345 |
| | : | |
| **Plaintiff,** | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **TUCKER ARENSBERG, P.C., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## Order

And now this 26th day of February 2020, in accordance with the accompanying Memorandum, the defendants' motion to compel (Doc. 86) is GRANTED.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge