Close IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRIME ENERGY AND CHEMICAL, LLC** | : | CIVIL NO. 2:18-CV-0345 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **TUCKER ARENSBERG, P.C., et al.,** | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### I. Factual Background

This case has been referred to us for the purpose of resolving several discovery disputes, including a motion to compel by the plaintiff. (Doc. 85). The background of this dispute is thoroughly detailed by the district court in a series of opinions addressing dispositive motions. See Prime Energy & Chem., LLC v. Tucker Arensberg, P.C., No. CV 18-345, 2018 WL 3541862, at *1 (W.D. Pa. July 23, 2018), Prime Energy & Chem., LLC v. Tucker Arensberg, P.C., No. 2:18-CV-00345, 2019 WL 3778756, at *1 (W.D. Pa. Aug. 12, 2019). However, for purposes of our consideration of this discovery dispute, the pertinent facts can be simply stated:

The plaintiff, Prime Energy, is a Florida-based oil and gas company that entered into a contractual agreement with certain businesses operated by a man named Mark Thompson. Thompson and his businesses were clients of the defendant

1

law firm and attorney which performed legal work relating to this transaction. This agreement between Prime Energy and the Thompson-related entities was related to the $3 million purchase of assets at the oil and gas property known as the "Swamp Angel" property in McKean County, Pennsylvania. According to the plaintiff's complaint, in 2015 and 2016, Prime Energy engaged in a series of transactions with Mr. Thompson and his businesses in connection with this agreement. These transactions and their aftermath gave rise to this lawsuit. In its complaint, Prime Energy asserts that, in connection with these transactions, the defendant law firm and attorney engaged in a series of fraudulent activities relating to the ownership of the property, the disposition of deposit money, concealment of other litigation relating to the property, and other alleged cover-ups. Prime Energy also brings claims against the defendants grounded in recklessness, negligence, and *respondeat superior* liability. (Doc. 50). Prime Energy alleges that it suffered a series of significant direct and consequential damages as a result of this fraud. (Id.)

With Prime Energy's claims framed in this fashion, the parties have engaged in a course of discovery which has been at times acrimonious. As part of that discovery, the plaintiff filed a motion to compel, which initially sought to compel the production of four categories of information. (Doc. 85). Upon reflection, Prime Energy agreed to abandon or defer discovery of two of these contested categories of

information. (Doc. 103). Thus, two disputed matters remain in this motion to compel.

First, the plaintiff seeks information regarding the law firm's receipt and disposition of a $50,000 deposit payment that was made in connection with the Swamp Angel transactions and received by the defendants. Prime Energy alleges that these funds were stolen and misapplied by the defendants when they were used to pay other outstanding obligations that Thompson and Thompson-controlled entities owed to the defendants. The defendants have responded to this request by asserting that they have provided all the information regarding the disposition of these funds in depositions and have produced the invoices relating to the receipt and disposition of this payment to the plaintiff, albeit in a redacted form. Prime Energy's rejoinder to this assertion is that it should receive the invoices in their unredacted form and should also be provided pertinent portions of the defendant law firm's ledgers.

In addition, the plaintiff demands production of all communications between Mr. Thompson and the defendant, Michael Shiner, an attorney, which are not privileged and relate to the underlying transactions at dispute in this case. The defendants have responded by asserting that they have produced all relevant, non-privileged communications between Mr. Shiner and Thompson between 2015 and 2016, the timeframe specified in Prime Energy's complaint. The defendants,

therefore, assert that they have produced all of the evidence they possess which is responsive to these discovery demands.

Prime Energy is dissatisfied with this response, alleging that in 2018 and 2019, Mr. Thompson sent angry and threatening communications to Prime Energy's principals. Even though Mr. Thompson is not a party to this lawsuit, Prime Energy speculates that Thompson's communications, which took place two to three years after the events alleged in its complaint, are related to those underlying events and took place with the active or tacit approval of Mr. Shiner. Based upon this speculative assertion, Prime Energy seeks disclosure of communications between Shiner and Thompson post-dating the transactions at issue in this lawsuit, to the extent that those communications involved the matters at issue in this case and are not cloaked in privilege.

This motion is now fully briefed and is therefore ripe for resolution. For the reasons set forth below, the motion to compel will be granted, in part, and denied in part.

**II.  Discussion**

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching

4

discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

(b) Discovery Scope and Limits.

> (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits....Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Accordingly, at the outset it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin

6

and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

>Finally:

>One other immutable rule defines the court's discretion when ruling on motions [to compel]. It is clear that the court cannot compel the production of things that do not exist. Nor can the court compel the

creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation.

Amfosakyi v. Frito Lay, No. 1:11-CV-651, 2011 WL 5593133, at *3 (M.D. Pa. Nov. 17, 2011), aff'd sub nom. Amfosakyi v. Frito Lay, Inc., 496 F. App'x 218 (3d Cir. 2012), and aff'd sub nom. Amfosakyi v. Frito Lay, Inc., 496 F. App'x 218 (3d Cir. 2012).

Applying these benchmarks, we note at the outset that to the extent that the defendants have attested that they have produced all relevant documents in their possession, custody, and control in response to some of these discovery demands, we simply "cannot compel the production of things that do not exist." Id. Therefore, to the extent that Prime Energy seeks that which does not exist, its motion will be denied.

As for the more specific concerns voiced by Prime Energy, at the outset with respect to Prime Energy's questions concerning the receipt and disposition of the $50,000 deposit the defendant law firm received as part of the Swamp Angel transaction, it is unclear to us what further information Prime Energy hopes to obtain beyond that previously disclosed by the defendants, namely, that:

> Michael Shiner testified at his deposition that he and Tucker Arensberg represented Mark Thompson in multiple matters and, at Mark Thompson's request, did not break apart the work that they performed for Mark Thompson and Mid East Oil Company into separate invoices according to the specific matter. All work for Mark Thompson, including work performed with regard to the Swamp Angel Transaction, was invoiced to Mark Thompson and Mid East Oil

> Company, together, on invoices captioned "RE: Apollo Global Management," which was the name of very first matter with regard to which Michael Shiner and Tucker Arensberg represented Mark Thompson. As Michael Shiner testified at his deposition, the $50,000 payment of legal fees that was received from Mid East Oil Company "during the time that the negotiation and work on the Swamp Angel sale was ongoing," was applied to the invoices captioned "RE: Apollo Global Management" which included, thereon, work that Michal Shiner and Tucker Arensberg had performed to that date on the Swamp Angel Transaction as well as other matters. See Michael Shiner deposition testimony, pp. 51-57.

(Doc. 92 at 16). Further, to the extent that the gravamen of Prime Energy's claim is that this money was used to pay legal fees that were unrelated to the Swamp Angel transaction, it would seem that the parties could stipulate to this fact. We also understand that client billing records could contain unrelated entries of a sensitive nature which would appropriately be the subject of redaction. Nonetheless, acting out of an abundance of caution, and in order fully address Prime Energy's concerns, we will order the defendants to produce the responsive materials in their possession to the court *in camera*, in both redacted and unredacted forms, for our review.

As for Prime Energy's request for production of non-privileged communications between Mr. Shiner and Mr. Thompson that related to the issues in this litigation and post-dated the timeframe of the events in the complaint, 2015-2016, we find the proffer of relevance made by Prime Energy to be highly speculative. Absent some further indication of involvement by the defendants in these communications, which is notably lacking here, we believe that the angry

9

exchanges Mr. Thompson may have had with individuals in 2018 and 2019, years after these transactions, simply do not provide a basis for further discovery from Tucker Arensberg or Mr. Shiner. We do, however, recognize that there may be topically relevant and non-privileged communications between Mr. Shiner and Mr. Thompson which may have taken place after 2016. Further, it is unclear from the defense submission whether the defendants' document search went beyond 2016. Therefore, once again acting out of a surfeit of caution, we will instruct the defendants to conduct a further review for any relevant non-privileged communications between Mr. Shiner and Mr. Thompson that related to the transactions at issue in this litigation and took place between 2016 and March 2018, the date upon which this complaint was filed. If this search reveals further, relevant and non-privileged communications, those communications should be produced. If nothing relevant is located, the defendants shall notify the plaintiff that no further relevant records exist.

      An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRIME ENERGY AND CHEMICAL, LLC** | : | CIVIL NO. 2:18-CV-0345 |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Kane)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **TUCKER ARENSBERG, P.C., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

And now this 26th day of February 2020, in accordance with the accompanying Memorandum, the plaintiff's motion to compel (Doc. 85) is GRANTED, in part, and DENIED, in part as follows: The motion is DENIED with the following two exceptions:

First, on or before **March 26, 2020**, the defendants shall provide the Court with both redacted and unredacted copies of the documents previously disclosed to the plaintiff in response to the plaintiff's request for production of documents relating to a $50,000 deposit received by the defendants for our *in-camera* inspection.

Second, on or before **March 26, 2020** the defendants shall conduct a further review for any relevant non-privileged communications between Mr. Shiner and Mr. Thompson that related to the transactions at issue in this litigation and took place

11

between 2016 and March 2018, the date upon which this complaint was filed. If this search reveals further, relevant and non-privileged communications, those communications should be produced.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge