IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRIME ENERGY AND CHEMICAL, LLC,** | : : : | **CIVIL NO. 2:18-CV-0345** |
| **Plaintiff,** | : : | |
| | : | **(Judge Kane)** |
| v. | : : | |
| | : | **(Magistrate Judge Carlson)** |
| **TUCKER ARENSBERG, P.C., et al.,** | : : | |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER

### I.   Factual Background

This case has been referred to us for the purpose of resolving several discovery disputes, including a motion to compel by the plaintiff. (Doc. 97). The background of this dispute is thoroughly detailed by the district court in a series of opinions addressing dispositive motions. See Prime Energy & Chem., LLC v. Tucker Arensberg, P.C., No. CV 18-345, 2018 WL 3541862, at *1 (W.D. Pa. Jul. 23, 2018); Prime Energy & Chem., LLC v. Tucker Arensberg, P.C., No. 2:18-CV-00345, 2019 WL 3778756, at *1 (W.D. Pa. Aug. 12, 2019). However, for purposes of our consideration of this discovery dispute, the pertinent facts can be simply stated:

The plaintiff, Prime Energy, is a Florida-based oil and gas company that entered into a contractual agreement with certain businesses operated by a man named Mark Thompson. Thompson and his businesses were clients of the defendant

1

law firm and attorney which performed legal work relating to this transaction. This agreement between Prime Energy and the Thompson-related entities was related to the $3 million purchase of assets at the oil and gas property known as the "Swamp Angel" property in McKean County, Pennsylvania. According to the plaintiff's complaint, in 2015 and 2016, Prime Energy engaged in a series of transactions with Mr. Thompson and his businesses in connection with this agreement. These transactions and their aftermath gave rise to this lawsuit. In its complaint, Prime Energy asserts that, in connection with these transactions, the defendant law firm and attorney engaged in a series of fraudulent activities relating to the ownership of the property, the disposition of deposit money, concealment of other litigation relating to the property, and other alleged cover-ups. Some of Prime Energy's claims in this lawsuit relate to alleged misdeeds in the course of other litigation between Prime Energy and Thompson in 2016, litigation in which the Tucker Arensburg law firm represented Thompson. Prime Energy also brings claims against the defendants grounded in recklessness, negligence, and *respondeat superior* liability. (Doc. 50). Prime Energy alleges that it suffered a series of significant direct and consequential damages as a result of this fraud. (Id.)

      With Prime Energy's claims framed in this fashion, the parties have engaged in a course of discovery which has been at times acrimonious. As part of that discovery, the plaintiff filed a motion to compel, which makes sweeping and

somewhat hyperbolic allegations of spoliation of evidence, invites the court to conduct an evidentiary inquest into this alleged spoliation, and seeks other far-reaching discovery into this alleged spoliation, including further depositions, forensic examinations, and the potential filing of an amended complaint devoted to these spoliation claims. (Doc. 97).[1]

While the motion broadly levels these grave allegations of spoliation in a wholesale fashion, the legal and factual support proffered by the plaintiff in support of this motion is far more modest. It seems that the gist of this motion is a claim of spoliation based upon the fact that in the Fall of 2017 Michael Shiner, a Tucker Arensburg attorney and named defendant in this lawsuit, turned in the firm cellphone which he possessed in 2016 and received a replacement cellphone.[2] This

---

[1] Prime Energy's pleadings often require a great deal of the reader. Several factors combine to make these pleadings an occasionally challenging read. First, at times Prime Energy presents its arguments in a somewhat stream of consciousness style, which presumes a vast body of pre-existing knowledge of the underlying facts viewed exclusively from the plaintiff's perspective. The pleadings also make sweeping claims, which often turn out not to be entirely correct. For example, Prime Energy has alleged both that it was provided with no text messages whatsoever from the defendants in discovery and has suggested that Mr. Shiner refused to provide his cellphone password. Neither of these factual averments appears to be entirely accurate. Finally, the pleadings are littered with occasional curious non sequitur asides such as a footnote dedicated to the alleged notoriety of sharpie pens. (Doc. 113, at 19). None of these features aides us in assessing the claims made by the plaintiff.

[2] The description of this event illustrates the occasionally hyperbolic approach taken by plaintiff's counsel in this litigation. In its pleadings, Prime Energy alleges that Shiner "threw away ('discarded')" the cellphone, a characterization designed to infer

commonplace event in our increasingly technological workplace forms the basis for the instant motion which makes serious charges of spoliation of evidence.

In our view these spoliation allegations rest upon the thinnest of reeds. It seems that at the time that Shiner replaced this cellphone in the Fall of 2017, he had been participating as counsel in the litigation between Prime Energy and Thompson and when he replaced this cellphone it is alleged that he did not preserve the text messages on the cellphone that may have related to the law firm's representation of Thompson in matters concerning Prime Energy. However, at the time that Mr. Shiner replaced his cellphone, the need to preserve text messages for use in this lawsuit would not have been apparent since this lawsuit was not filed until March of 2018, some six months *after* this cell phone was replaced. Notwithstanding this paucity of proof regarding the foreseeability of the need to preserve these cellphone text messages, Prime Energy urges us to entertain spoliation hearings, forensic examinations, and other proceedings based largely upon the replacement of this cellphone months prior to the commencement of this litigation.

This motion is now fully briefed and is therefore ripe for resolution. Because we believe that Prime Energy has not made a sufficient showing to justify the

---

some sinister motivation. (Doc. 98, at 6). Yet it seems clear that the cellphone was replaced some six months prior to any indication that Prime Energy intended to sue Shiner or the Tucker Arensburg law firm, a stubborn fact which wholly undermines the inference the plaintiff invites us to draw.

extraordinary relief that it seeks, for the reasons set forth below, the motion to compel will be denied.

## II. Discussion

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than *de novo* standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. In this case, the plaintiff's motion to compel seeks a hearing on alleged spoliation claims and other related relief. In making this request, however, the plaintiff must be mindful of the precise and exacting standards which govern spoliation claims. "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; *there has been actual suppression or withholding of evidence*; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012). "In assessing a spoliation claim: '[R]elevant authority requires that four (4) factors be satisfied for the rule permitting an adverse inference instruction to apply: 1) the evidence in question must be within the party's control; 2) it must appear that there has been actual suppression or withholding of the evidence; 3) the evidence destroyed or withheld was relevant to claims or defenses; and 4) it was reasonably foreseeable that the evidence would later be discoverable.' " Victor v. Lawler, No. 3:08-CV-1374, 2011 WL 1884616, at *2-3 (M.D. Pa. May 18, 2011), on reconsideration, No. 3:08-CV-1374, 2011 WL 4753527 (M.D. Pa. Oct. 7, 2011).

In practice, spoliation litigation rarely turns on issues relating to the first two aspects of this four-part test. In most instances, it is self-evident that: "[1] the evidence was in the party's control; [and] [2] the evidence is relevant to the claims or defenses in the case." Bull, 665 F.3d at 73. Rather, the critical issues in assessing

6

whether spoliation inferences are proper typically revolve around the latter two aspects of this four-part test; namely, whether: "[3] there has been actual suppression or withholding of evidence; and, [4] the duty to preserve the evidence was reasonably foreseeable to the party." Id.

Turning first to the duty to preserve, the applicable benchmark in this regard is whether that duty was "reasonably foreseeable to the party." Id. "[T]he question of reasonable foreseeability is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.' Micron Technology, Inc., 645 F.3d at 1320." Bull, 665 F.3d at 77-78. Thus, "[a] party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. Baliotis v. McNeil, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994). As one court has observed in this regard:

> Whether a duty to preserve evidence is reasonably foreseeable is evaluated objectively. Bull, 665 F.3d at 78. "[T]he question of reasonable foreseeability is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.' " Id. at 77-78 (internal quotation omitted). "While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." Mosaid, 348 F. Supp. 2d at 336 (internal quotation omitted).

Bozic v. City of Washington, Pa., 912 F. Supp. 2d 257, 267 (W.D. Pa. 2012). This foreseeability requirement is expressly incorporated into Rule 37 of the Federal Rules of Civil Procedure which provides that a spoliation inference is only

7

warranted: "If electronically stored information *that should have been preserved in the anticipation or conduct of litigation* is lost because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e).

However, a finding that a party had a duty to preserve evidence which was lost will not, by itself, warrant a finding of spoliation. The party seeking a spoliation finding must also prove a culpable state of mind. In this respect:

> For the [spoliation] rule to apply . . . it must appear that there has been an actual suppression or withholding of the evidence. *No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.* See generally 31A C.J.S. Evidence § 156(2); 29 Am. Jur. 2d Evidence § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent."). Brewer, 72 F.3d at 334 (emphasis added). Therefore, a finding of bad faith is pivotal to a spoliation determination. This only makes sense, since spoliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than—for instance— misplaced. *Withholding requires intent.*

Bull, 665 F.3d at 79 (emphasis added and in original).

Judged against these settled legal benchmarks, we find that Prime Energy simply has not made out a sufficient threshold showing to justify the far-reaching spoliation inquiry which it proposes. In our view this motion founders on two insurmountable obstacles. First, there is an insufficient showing of a foreseeable need to preserve these text messages in the Fall of 2017 when Mr. Shiner traded in

8

his work cellphone. Second, given this lack of foreseeability, Prime Energy has not made an adequate showing of an intent to withhold evidence on the part of the defendants to justify a spoliation hearing. Simply put, at the time that Mr. Shiner replaced his cellphone in September of 2017 he and his law firm were litigators, not litigants. Shiner and the Tucker Arensburg law firm represented Mark Thompson in litigation and other matters. However, that representational role, standing alone, does not create a reasonable inference that all cellphone text messages needed to be preserved into the indefinite future in the event that a litigation adversary of their client decided months later to file a lawsuit against the law firm itself.

Prime Energy cannot create a duty to preserve in the abstract or out of some speculative ether. Rather it is well-settled that "[T]he question of reasonable foreseeability is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.' Micron Technology, Inc., 645 F.3d at 1320." Bull, 665 F.3d at 77-78. In this case, as we confront the myriad factual situations inherent in the spoliation inquiry, it is entirely undisputed that Prime Energy did not put the defendants on notice of its intent to sue them prior to March 2018. Given this complete lack of prior notice—which seems uncontested on the record before us— the possibility that such a lawsuit might arise was not reasonably foreseeable in September of 2017 when Mr. Shiner replaced his cellphone. Quite the contrary, the

notion that Shiner and the Tucker Arensburg law firm would later be sued by Prime Energy strikes us as entirely unforeseeable in the Fall of 2017. This lack of any reasonable foreseeability of the need to preserve these text messages is fatal to Prime Energy's spoliation claims in this litigation.

Nor can Prime Energy cobble together a speculative spoliation inference based upon the fact that the defendants previously represented Mark Thompson in other litigation. Notably, no one has identified any facet of the discovery in that other litigation which would have triggered a preservation duty on the defendants to save any text messages that Mr. Shiner may have exchanged with Thompson in the event that a future litigant wished to obtain those text messages months or years later. Moreover, it is hardly surprising that no one has pointed to a preservation duty arising out of discovery demands in prior cases in which the defendants represented Thompson since discovery requests for communications between a party and litigation counsel in those prior cases would have run afoul of attorney-client and work-product privileges.

Further, the preservation obligation posited by Prime Energy is simply far too speculative and sweeping in its reach for us to embrace. It would, in essence, impose a duty on *all* attorneys to preserve *all* text messages with *all* clients for *all* time in the off chance that some future litigation adversary might elect to sue the law firm.

Finally, concluding as we do that Prime Energy simply has not made a sufficient showing of a duty to preserve these cellphone text messages, we also find that there is insufficient evidence to warrant the suggestion of bad faith on the defendants' part. Conducting this fact-specific inquiry, we simply cannot conclude that the defendants intentionally destroyed text messages when the need to preserve those messages was completely unclear. Therefore, as to both of these elements of a spoliation claim, Prime Energy has not made the initial showing that would be necessary to justify spoliation discovery and hearings. Having reached these conclusions, we will deny Prime Energy's motion to compel in support of spoliation discovery. (Doc. 97).

In closing, we bring one other issue of law and technology to the attention of the parties. As all parties know, we preside in the Middle District of Pennsylvania, but this case is filed in the Western District of Pennsylvania. These pre-trial matters were referred to us by the presiding district court judge, who is also located in the Middle District of Pennsylvania. While for some time we had been routinely receiving electronic case filing notices in this litigation, it appears that due to some technological issues, that practice ceased in May of 2020. While we are now actively correcting this issue, all parties should understand that any matters which you endeavored to bring to our attention through electronic case filing since Spring 2020 may not have been received by us. Therefore, while we will review the docket to

determine whether any additional matters require attention, we will also direct the parties to file a joint status report identifying any remaining unresolved pre-trial issues on or before October 7, 2020.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRIME ENERGY AND CHEMICAL, LLC,** | : | **CIVIL NO. 2:18-CV-0345** |
| | : | |
| **Plaintiff,** | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **TUCKER ARENSBERG, P.C., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

And now this 23d day of September 2020, in accordance with the accompanying Memorandum, the plaintiff's motion to compel in support of spoliation discovery (Doc. 97) is DENIED. IT IS FURTHER ORDERED that the parties shall file a joint status report identifying any remaining unresolved pre-trial issues on or before **October 7, 2020.**

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge